Borenstein, J.
The plaintiff Arthur Fraumeni brings this action against the defendants, Aleppo Temple Shriners and Robert Gonynor,- dba Trailer Home Services, as a result of injuries he allegedly suffered when he was thrown from the horse he was riding. Defendant Aleppo Temple now moves for summary judgment on the grounds that the plaintiff, on undisputed facts, cannot prove the essential elements of his claims. A review of the facts, the law and the pleadings, leads this court to conclude that defendant’s motion for summary judgment should be ALLOWED.
BACKGROUND
Plaintiff Fraumeni alleges that on August 11, 1993. he went to ride a horse named Poco stabled at Robert Gonynor’s residence and business, Trailer Home Services in Shirley, Massachusetts. Poco was previously owned by Gerald Norman who donated the horse to the Aleppo Temple in 1992. Plaintiff Fraumeni, accompanied by Robert McCracken, Captain of the Aleppo Temple Shriners Mounted Patrol, sought to “try out” Poco to determine if the horse was suitable to be ridden in an upcoming Shriners’s parade. After the plaintiff mounted the horse, she bolted and began to buck, causing the plaintiff to become dislodged from his saddle. In the course of Poco’s bucking and plaintiffs subsequent fall, plaintiff alleges that he struck his pelvis and sustained serious injuries.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P.56(c). The moving party is saddled with the burden of affirmatively demonstrating the absence of a triable issue, and that the summaiy judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The nonmoving party’s failure to prove an essential element of its case renders all other facts immaterial and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
Defendant Aleppo argues that it is entitled to summary judgment on all counts as a matter of law because the plaintiff has no reasonable expectation of proving the essential elements of its claims. Plaintiff claims that: 1) defendant negligently kept a dangerous horse; 2) defendant is liable under a breach of warranty for leasing a horse unfit for use as a parade horse; 3) defendant failed to warn Fraumeni of Poco’s dangerous state of deconditioning and the existence of prior dangerous incidents; 4) defendant is vicariously liable for its agents, servants and employees including Robert Gonynor, Joseph Gonynor, Raymond McCracken, Gerald Norman and Trailer Home Services;[1] and 5) defendant is not immune from G.L.c. 128, §2D and instead, demonstrated a wilful or wanton disregard for the safety of the plaintiff when Joseph Fraumeni stopped exercising the parade horse. Defendant Aleppo Temple asserts that plaintiff cannot show that Poco had any dangerous propensities. Defendant also claims that plaintiff has not produced any evidence showing that his accident was caused by Poco’s alleged deconditioning or dangerous propensity. Finally, defendant suggests that Aleppo Temple, as a fraternal, nonprofit organization pursuant to G.L.c. 180, §7, is not a merchant whose business is the sale or leasing of horses and therefore, is not subject to breach of warranty claims.
In order to make out a claim for breach of warranty of merchantability, plaintiff first must show that Aleppo owned the horse, Poco, and sought to sell, contract to sell or lease her to Fraumeni. Mason v. General Motors Corp., 397 Mass. 183, 189 (1986) (no warranty of merchantability was implied when customer was injured while test driving an allegedly defective motor vehicle). In the present case, there is some evidence that the defendant or its agents intended to lease the horse to Fraumeni. However, Fraumeni stated that no money changed hands nor did he rent the horse before mounting her. Therefore, the circumstances of the alleged incident can be likened to a “test drive.” A review of case law indicates that a “test drive” is not a transaction in which a warranty of merchantability is implied under G.L.c. 106, §2-314. Mason v. General Motors Corp. at 189. As a result, plaintiffs’ claim for breach of warranty must fail. In addition, all other claims derived from plaintiffs’ breach of warranty claim are similarly unsubstantiated. Furthermore, in light of the inherent dangerous nature of horses, plaintiffs have failed to produce evidence showing that Poco was “dangerously defective.”
In order to recover for injuries caused by domestic animals under the common law of negligence,[2] the owner or keeper of the animal must have some knowledge or reasons to know of the animal’s vicious manner or dangerous propensity. Splaine v. Eastern Dog Club, Inc., 306 Mass. 381, 385 (1940). Given the inherent dangerous propensity of horses, plaintiff has failed to produce any evidence showing that horses are *662 ordinarily harmless. In fact, common knowledge and the purpose of G.L.c. 128, §2D suggest otherwise. Regardless, plaintiff has failed to produce any evidence of any specific dangerous propensity of Poco. In his deposition, Fraumeni admitted that knowing about the incident involving Mrs. Norman would not have dissuaded him from riding the horse. Moreover, Mrs. Norman acknowledged that the incident was her fault for forcing the horse to go down a steep embankment. Finally, there is no admissible evidence which shows that any alleged “deconditioning” of Poco caused the horse to buck and throw Fraumeni.
It is uncontroverted that horses have a natural dangerous propensity without regard to conditioning or training. Fraumeni himself asserted that even with the proper care, horses have a propensity to buck and that “you can never depend on them.” Deposition of Arthur Fraumeni, p. 49, 11.9-21. Based upon the dangerous nature of horses and the absence of evidence showing Poco’s particular propensities, plaintiffs common law negligence claim cannot survive summary judgment.
Recognizing the unpredictable nature of equines, in 1992 the Massachusetts Legislature enacted G.L.c. 128, §2D, which grants immunity from liability to equine professionals and others as to injuries to participants resulting from the inherent risks of equine activities. Massachusetts General Laws c. 128, §2D, subsection (b) provides, with four specific exceptions, that equine professionals[3] are “not liable for injury to ... a participant resulting from the inherent risks of equine activity ..." and that “no participant shall make any claim against, maintain an action against, to recover from ... an equine professional, ... for injury, loss, damages, or death of the participant resulting from any of the inherent risks of equine activities.” Plaintiff Fraumeni argues that two of the statute’s exceptions are relevant to the present case. First, he claims that under G.L. 128, §2D(c)(2), Aleppo Temple does not escape liability because plaintiffs injuries resulted from the dangerous latent condition of the horse. Contrary to plaintiffs contentions, the language of subsection (c)(2) pertains only to “dangerous latent conditions” of the land. Plaintiff does not allege that any condition of the land itself caused his injuries and thus, this subsection does not except defendant Aleppo Temple from the statutory immunity. In addition, the absence of the requisite warning sign pursuant to G.L.c. 128, §2D(d)(l) alone does not remove the immunity provided by the statute. Instead, the absence of the sign must be accompanied by the aforementioned “dangerous latent condition” in the land to preclude immunity.
Second, plaintiff contends that by failing to ride Poco daily, Joseph Gonynor, as an agent of Aleppo Temple, “committed an omission that constitute^] [a] wilful or wanton disregard for the safety of the participant, and that act of omission caused the injury” which would permit liability in spite of G.L. 128, §2D (b)(3). Plaintiff has not produced any evidence to establish that Joseph Gonynor’s failure to exercise Poco in the weeks preceding Fraumeni’s try out jeopardized his safely in any way. In addition, there is no evidence to suggest that Joseph Fraumeni was riding the horse as an agent of Aleppo Temple, but rather to the contrary, deposition testimony specifically reveals that Joseph rode Poco on his own time and not as a paid employee of Robert Gonynor or as an agent of Aleppo Temple. Therefore, plaintiff cannot recover in negligence because Aleppo Temple is entitled to the immunity set forth in G.L.c. 128, §2D.
Since it is beyond doubt that plaintiff cannot prove facts which will sustain the essential elements of each of its claims, summary judgment is appropriate.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED.

 On April 14, 1997, this Court allowed defendant Robert Gonynor’s motion for summary judgment with respect to him, and agents, employees and servants of Trailer Home Services. Consequently, the Court need not address any claims of vicarious liability against Aleppo Temple in regard to those defendants.

 The Court recognizes that the common law of negligence with respect to equine animals may be supplanted by Massachusetts G.L.c. 128, §2D enacted in 1992. However, given the arguments of the parties, the court need not reach such a decision in this case. Instead, the court chooses to address each claim as presented in the briefs.

 Pursuant to G.L.c. 128, §2D, “equine professional” is defined as “a person engaged for compensation: (1) . . . renting to a participant an equine for the purpose of riding . . . the equine ...” Viewed in the light most favorable to the non-moving parly, the facts reveal that Aleppo Temple may have owned Poco, the horse involved in the incident. Consequently, Aleppo Temple is subject to the provisions of G.L.c. 128, §2D.